UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BADGER MUTUAL INSURANCE COMPANY,

        Plaintiff,

v.

Case No. 08-14223
Honorable David M. Lawson

ROSS ENTERPRISES, INC., a Michigan
Corporation, and SUZANNE DIMILIA, and
MICHAEL BRZEZINSKI, Co-personal
Representatives of the Estate of KENNETH
BRZEZINSKI,

        Defendants.
_____/

## ORDER AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on the defendants' motion to dismiss the plaintiff's action brought under the Federal Declaratory Judgment Act. The plaintiff in this case is an insurance company seeking a declaration that it is not required to indemnify defendant Ross Enterprises, Inc. under a comprehensive general liability insurance policy. The defendants are the parties to a pending state court action arising from an automobile accident in which Kenneth Brzezinski was killed by a driver who previously had been served alcohol at a bar owned by Ross Enterprises, Inc. In their motion to dismiss, the co-personal representatives of Kenneth Brzezinski's estate argue that the Court should not exercise its discretionary declaratory judgment jurisdiction. The plaintiff opposes the motion, which was argued by the parties on open court on January 7, 2009. After considering the parties' arguments and the factors bearing on whether discretionary jurisdiction should be exercised in insurance coverage disputes of the present nature, the Court believes that the complaint does not set forth an action that ought to be entertained by this Court. Therefore, the Court will grant the motion to dismiss.

I.

The plaintiff, Badger Mutual Insurance Company, actually issued two insurance policies to defendant Ross Enterprises. One is a liquor liability policy that contains a $50,000 limit of liability. Badger does not contest its obligation to defend and indemnify Ross under that policy, and in fact it has furnished Ross a defense under that policy in the presently pending state court action.

The second policy – the one that has provoked the present lawsuit in this Court – is a comprehensive general liability (CGL) policy with a liability limit of $1,000,000. That policy plainly obligates Badger to indemnify Ross for the payment of all "damages due to bodily injury or property damage to which this insurance applies." Compl., Ex. 1. However, that policy contains an exclusion of coverage for liability that arises from

> a. causing or contributing to the intoxication of a person;
> b. the furnishing of alcoholic beverages to a person under the influence of alcohol or under the legal drinking age; or
> c. the law or regulation relating to the sale, gift, distribution, or use of alcoholic beverages.
> This exclusion applies if you are in the business of manufacturing, distributing, selling, or serving alcoholic beverages.

*Ibid.*

According to the complaint filed in state court, Ross Enterprises operates the Pantheion Club, a strip club located in Dearborn, Michigan. On March 20, 2006, Ronnie Jackson entered the Club and spent approximately four hours drinking alcohol.

> At approximately 6:44 p.m., Defendant, Ronnie S. Jackson, was escorted out of the club by a valet who was summoned by the manager and the disc jockey, as Jackson had passed out in a pool of his own vomit after having consumed such large quantities of alcohol. Defendant's manager had arranged for a cab to be called to drive Jackson home. Despite the cab having been called, the valet for the bar pulled Jackson's minivan to the front door and gave him the keys. Jackson was allowed to drive out of the parking lot.

Def.s' Reply, Ex. A, Am. Compl. ¶ 6. Six minutes later, Mr. Jackson was driving his minivan down Michigan Avenue at speeds approaching ninety miles per hour. He failed to stop at a red light, hitting eight vehicles, including the 2005 Ford Escape being driven by decedent Kenneth Brzezinski. Mr. Brzezinski suffered a fatal trauma to the head and neck.

Suzanne DiMilia and Michael Brzezinski were appointed as personal representatives of the estate of Kenneth Brzezinski, and on July 18, 2006, they filed a complaint against Jackson and Ross Enterprises in Wayne County, Michigan circuit court. The case was given case number 06-620326 and assigned to Judge John A. Murphy. The complaint alleged a negligence claim against Ronnie Jackson and a claim under Michigan's dram shop statute, Mich. Comp. Laws § 436.1801, against Ross.

Apparently realizing that the insurance coverage for Ross's dram shop liability was limited under Ross's insurance policy, the state court plaintiffs sought to amend their complaint to allege a theory of liability against Ross that would trigger coverage under the CGL policy with the higher limit of liability. When those plaintiffs moved to amend their complaint, Badger – apparently informed of the motion by the lawyer whom it assigned to defend Ross under the liquor liability policy – attempted to intervene directly as a defendant in the state court lawsuit. That effort proved futile, and in an order signed on September 9, 2008, Judge Murphy denied Badger's motion to intervene and granted DiMilia and Brezezinski's motion to amend the complaint. The order also stated:

> IT IS FURTHER ORDERED that Badger Mutual Insurance Company will file a declaratory judgment action within 30 days of this Order.
> IT IS FURTHER ORDERED that the instant case will be stayed pending the outcome of the declaratory action.

Compl., Ex. 4, Order Re: Plaintiffs' Em. Mot. to File Am. Compl., Case No. 06-620326 (Wayne County Cir. Ct. Sept. 9, 2008).

On September 18, 2008, the Brzezinski estate filed an amended complaint that added a count alleging negligence against Ross Enterprises. The amended complaint adds allegations that Ross Enterprises assumed a duty of care "to provide Jackson with alternative transportation due to his drunken condition," but did not reasonably complete this undertaking when it delivered Jackson's vehicle to him. Def.s' Reply, Ex. A., Am. Compl. ¶ 19.

On October 2, 2008, Badger filed its declaratory judgment action, as ordered by Judge Murphy, but the insurance company brought the claim in federal court, not state court where it tried and failed to intervene. Badger's complaint in this Court seeks a declaration that it is under no obligation to defend and indemnify under the CGL policy for any negligence committed by Ross Enterprises when it failed to put Jackson safely in a cab. It argues that the amendment to the state court complaint was futile because "[t]he negligence claim proposed by the Co-Personal Representatives does not state a claim independent of the liability imposed on Ross Enterprises by the State of Michigan's dram shop act, MCL 436.1801, because Michigan common law . . . does not recognize a cause of action for the claimed negligent conduct." Compl. ¶ 23. "In addition, assuming, without conceding, that Ross Enterprises' employees and/or independent contractors assumed a duty to Mr. Jackson to provide him with alternate transportation, they assumed the duty only to Mr. Jackson and not to the Decedent or to the public." *Id.* at ¶ 27.

Defendants Suzanne DiMilia and Michael Brzezinski, the state court plaintiffs, have taken exception to Badger's emigration of the dispute from state court to federal court. They have filed their motion to dismiss, arguing that the Court should exercise its discretion to decline jurisdiction

of the declaratory judgment action so that the entire dispute – liability and coverage issues – can be decided in one forum.

II.

Although the federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), the exercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is not mandatory, *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942), and at times the better exercise of discretion favors abstention. "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 969 (6th Cir. 2000) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)). Abstaining from that opportunity generally "rest [s] on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)). Declining jurisdiction is always a sensible option to consider in declaratory judgment actions seeking an opinion on insurance coverage impacting litigation pending in another court, for although there is no *per se* rule prohibiting such actions in federal court, *see Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987), "[s]uch actions . . . should normally be filed, if at all, in the court that has jurisdiction over the litigation giving rise to the indemnity problem." *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004) (quoting *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986)).

The Sixth Circuit has "repeatedly held in insurance coverage diversity cases that 'declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court.'" *Bituminous Cas.*, 373 F.3d at 812-13 (quoting *Manley*, 791 F.2d at 463); *see also AM South Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004) (citing 10B Wright, Miller & Mary Kay Kane § 2765 at 638 (3d ed. 1998)) ("[I]t is not one of the purposes of the declaratory judgments act to enable a prospective negligence action defendant to obtain a declaration of non-liability."). However, "[t]hat is not to say that there is a per se rule against exercising jurisdiction in actions involving insurance coverage questions." *Bituminous Cas.*, 373 F.3d at 812-13. Instead, several factors have been articulated by the Sixth Circuit to be considered by a district court faced with a complaint seeking relief under the declaratory judgment act:

> 1) whether the declaratory action would settle the controversy;
> 2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> 3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata."
> 4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> 5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk Western Railroad. Co. v. Consol Rail Co.,* 746 F.2d 323, 326 (6th Cir. 1984); *see also Bituminous Cas.*, 373 F.3d at 814-15; *Roumph*, 211 F.3d at 968. For the reasons set forth below, the Court believes that the balance of the factors favors abstention in this case.

### A. Settling the controversy

Sixth Circuit precedent on this factor is somewhat inconsistent. *Compare Travelers Indem. v. Bowling Green Prof. Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007) ("The district court's decision could not settle the controversy in the underlying state court litigation; thus, the first factor favors the court not exercising jurisdiction.") *with Northland Ins. Co. v. Stewart Title Guar. Co.*, 327

F.3d 448, 454 (6th Cir. 2003) ("Considering the first and second factors, while the declaratory judgment would not end the dispute between Cailu and Stewart, it would settle the controversy regarding the scope of insurance coverage issued by Northland to Cailu, and whether Northland had a duty to defend the insureds."). Recently, however, the Sixth Circuit reconciled these cases on the premise that "the contrary results in these cases might . . . be explained by their different factual scenarios." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008). The *Flowers* court found that this factor may favor exercising jurisdiction when the plaintiff is not a party to the state litigation or there is a legal, and not a factual, dispute in federal court. *Id.* at 556.

However, the Court finds that this factor favors abstention in this case. A decision on the coverage question in this Court will not resolve the underlying dispute. In fact, a determination in this lawsuit will not result in a conclusive pronouncement on whether the plaintiff must indemnify the Club at all, since there is certain conduct by Ross Enterprises alleged by the state court plaintiffs that could trigger coverages for categories of damages that may fall within the scope of the CGL policy and other conduct that falls within the limited liquor liability policy. Whether the amounts claimed by the state court plaintiffs are attributable to one or the other category of conduct cannot be determined until the facts in the underlying case are resolved.

Although the plaintiff attempts to cast the issue as whether Michigan recognizes a particular cause of action, that is somewhat beside the point. What matters is whether Ross's conduct falls within an exclusion of the CGL policy or not. Badger asserts that it is willing to concede the allegations in the state court complaint as true, and that concession certainly is the relevant to the analysis of its duty to defend. *See Meridian Mut. Ins. Co. v. Hunt*, 168 Mich. App. 672, 676-77, 425 N.W.2d 111, 113-14 (1988). But Badger is defending Ross in all events, if not under the CGL

policy, then at least under the liquor liability policy. However, ultimately its duty to indemnify will be determined not on the allegations of the complaint, but on the precise facts that actually are proven at trial. Whether Michigan recognizes the brand of negligence alleged against Ross by the state court plaintiffs in their amended complaint, and if so whether those plaintiffs will be able to prove their case, will not be resolved until the state court makes its determinations. Apparently the state trial judge found a colorable claim against Ross apart from the dram shop action, since he allowed the amendment against a claim of futility. A decision by this Court will not upset that determination.

Weighing in favor of exercising jurisdiction is the fact that all parties in the state court litigation have been made a party to this case. Nevertheless, in light of the factual issues that must be resolved, this first factor favors abstention.

### B. Clarifying the legal relations

This second factor "is closely related to the first factor and is often considered in connection with it." *Flowers*, 513 F.3d at 557. The relevant inquiry is whether the federal judgment will "resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Ibid.*; *see also Northland*, 327 F.3d at 454; *but see Travelers Indem.*, 495 F.3d at 272 (holding that the second factor favored abstention because "although a declaratory judgment would clarify the legal relationship between the insurer and the insured pursuant to the insurance contracts, the judgment would not clarify the legal relationship between the parties in the underlying state action" (alterations and quotations omitted)); *Bituminous Cas.*, 373 F.3d at 814. Resolving the coverage question in the absence of persons who will be bound by the judgment is disfavored, *see Westfield*

*Insurance Corp. v. Mainstream Capital Corp.*, 366 F. Supp. 2d 519, 522 (E.D. Mich. 2005), although that is not a factor here.

In this case, all interested persons are parties to this lawsuit and will be bound by the judgment. *Compare Westfield*, 366 F. Supp. 2d at 522. It appears that the state court action has been stayed, at least for the time being, to allow the dispute as to coverage to be determined. This factor slightly favors retaining jurisdiction and hearing the case.

### C. Procedural fencing

Federal courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Flowers*, 513 F.3d at 558. A plaintiff who files his declaratory judgment claim after the state proceeding has begun generally does not implicate the concerns of this rule. *See ibid.*; *Northland*, 327 F.3d at 454. "A district court should not deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress.'" *Flowers*, 513 F.3d at 558 (quoting *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n. 1 (6th Cir. 1986)).

But there appears to be more at work here than merely a choice of forum. In the present case, the plaintiff filed suit in federal court after its request to intervene in the state court was denied. The same issue suggested by Badger in this Court – whether Michigan law recognizes a negligence claim against a tavern apart from the dram shop act – was presented to the state judge in the context of the state court plaintiffs' motion to amend their complaint and Badger's effort to intervene in that proceeding as a defendant. According to defendants DiMilia and Brzezinski, these issues were aired at a settlement conference before Judge Murphy, attended by Badger's attorney. The result was not to Badger's liking. The state court judge concluded that the claim for negligence

apart from serving the alcohol was not futile, as he permitted the state plaintiffs to amend their complaint. *See Miller v. Chapman Contracting*, 477 Mich. 102, 106, 730 N.W.2d 462, 464 (2007) (noting that "leave to amend a complaint may be denied for particularized reasons, such as . . . where amendment would be futile").

Badger's effort to intervene as a defendant in the tort action was a fool's errand, since it is well established that Michigan law does not permit a direct action by a third party against an insurer of a tortfeasor. Mich. Comp. Laws § 500.3030 ("In the original action brought by the injured person, or his or her personal representative in case death results from the accident, . . . the insurer shall not be made or joined as a party defendant."); *see also In re LaMarre*, 494 F.2d 753, 756 (6th Cir. 1974); *Allstate Ins. Co. v. Hayes*, 442 Mich. 56, 69 n. 13, 499 N.W.2d 743, 749 n. 13 (1993). But although the state trial judge denied Badger's motion to intervene, as he was required to do, he invited Badger to file a separate lawsuit regarding insurance coverage, which presumably would have been joined for certain proceedings with the tort claim before the same judge. *See* Mich. Ct. R. 8.110(D)(1) (stating that "if one of two or more actions arising out of the same transaction or occurrence has been assigned to a judge, the other action or actions must be assigned to that judge"). Badger chose not to file its declaratory judgment action in state court after learning that the state judge did not accept its argument that the negligence claim against Ross was futile.

So it appears that Badger seeks not just another forum, but another decision maker as well. That is the sort of procedural fencing that ought to be discouraged. The Court finds, therefore, that this factor strongly favors abstention.

D. Friction between federal and state courts

"'[T]he mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction.'" *Flowers*, 513 F.3d at 560 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987)). The Sixth Circuit announced three sub-factors to consider when weighing friction between federal and state courts:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814-15 (quoting *Roumph*, 211 F.3d at 968).

First, if the action involves resolution of factual issues being considered by the state court, federal jurisdiction is disfavored. *Flowers*, 513 F.3d at 561. The second sub-factor favors abstention when issues of unsettled state law are implicated. *See Travelers*, 495 F.3d at 272. The third sub-factor favors abstention when, as is the case for insurance contracts, interpretation of law is intertwined with state policy. *Flowers*, 513 F.3d at 561.

Badger seems to think that state law is well settled on the question of whether the state dram shop act is the exclusive remedy for individuals injured by a tavern's drunken patron. But the Michigan Supreme Court has held that

> [T]he dramsh[o]p act affords the exclusive remedy for injuries arising out of an Unlawful sale, giving away, or Furnishing of intoxicants. However, the act does not control and it does not abrogate actions arising out of unlawful or negligent conduct of a tavern owner other then Selling, giving away, or Furnishing of intoxicants, provided the unlawful or negligent conduct is recognized as a lawful basis for a cause of action in the common law.

*Manuel v. Weitzman*, 386 Mich. 157, 164-65, 191 N.W.2d 474, 477 (1971) (internal quotations and citations omitted), *overruled on other grounds by Brewer v. Payless Stations, Inc.*, 412 Mich. 673, 316 N.W.2d 702 (1982). In 1987, the Michigan Supreme Court announced a two-part analysis for determining whether a claim was preempted by the dram shop act:

> (1) Does the claim against "the tavern owner" arise out of an unlawful sale, giving away, or furnishing of intoxicants? If so, the dramshop act is the exclusive remedy.
>
> (2) If the claim arises out of conduct other than selling, giving away, or furnishing of intoxicants, does the common law recognize a cause of action for the negligent conduct? If so, then the dramshop act neither abrogates nor controls the common-law action. If not, there is no independent common-law claim.

*Millross v. Plum Hollow Golf Club*, 429 Mich. 178, 187, 413 N.W.2d 17, 21 (1987). In *Millross*, the plaintiff argued that she had a cause of action based on the defendant's

> breach of its duties: to provide proper supervision of its employees at the dinner event; to provide alternate transportation for the employee, Tomakowski, who had been working for thirteen hours prior to the dinner event and who had consumed alcoholic beverages while attending the dinner event, especially where there was no available public transportation; and not to serve and allow Tomakowski to be served "excessive" amounts of alcoholic beverages rendering him "intoxicated" and unable to safely drive from the work situation.

*Id.* at 192, 413 N.W.2d at 24. The supreme court rejected this argument, finding that the common law imposed a duty on the employer "where an employee became intoxicated and harmed a third person while still on the employer's premises, or the employer had permitted an intoxicated employee to use the employer's vehicle to leave the premises." *Id.* at 194, 413 N.W.2d at 24. The court held that there was no common law claim against an employer after the employee left the premises in his own vehicle. Moreover,

> Negligence in the furnishing of alcohol to an able-bodied person was not a tort at the common law. Neither alleging that the person was tired nor that he was required to attend the banquet alters this conclusion.

*Id.* at 195, 413 N.W.2d at 25.

But the state court plaintiffs' claim against Ross is distinguishable from the facts in *Millross*. In the present case, Jackson was not Ross's employee. Nor is the negligence claim based on furinshing alcohol to Jackson. Rather, it seems to be based on a negligent entrustment theory. Whether Michigan law recognizes a duty to third persons arising from Ross's act of entrusting the obviously intoxicated Jackson with his own vehicle remains to be seen. But the issue is not well settled. And this Court should not be put in the position of second-guessing the state trial judge on that point, which essentially is what Badger is asking this Court to do.

The Court concludes, therefore, that this factor also favors declining jurisdiction, as there are underlying factual and legal issues that must be resolved, the state court is in a better position to evaluate those issues under state law, and, because the extent of one's duty to the public must be determined, state law public policy is implicated. *See Flowers*, 513 F.3d at 561. The factual dispute is whether the defendant's actions of arranging and then failing to carry through with alternate transportation amounts to negligence that falls within the ambit of the general commercial liability policy's exclusion of liability imposed "by reason of causing or contributing to the intoxication of a person." This question is more amenable to resolution in the state court, where the plaintiff could file its declaratory judgment action, which undoubtedly would be consolidated for pretrial proceedings with the tort action.

### E. Alternative remedy

When state law provides an avenue for the resolution of insurance coverage, the fifth factor favors declining jurisdiction. *Flowers*, 513 F.3d at 562. Michigan allows insurers to bring declaratory judgment actions in state court. *See* Mich. Ct. R. 2.605; *see also Rose v. State Farm*

*Mut. Auto. Ins. Co.*, 274 Mich. App. 291, 294, 732 N.W.2d 160, 162 (2006). In fact, in this case, the state court invited the plaintiff to exercise its right to do exactly that, and facilitated that effort by staying the tort action. This factor favors abstention.

Badger argues in its brief that because there is diversity of citizenship, it has a constitutional right to be heard in this forum. The Court need not be detained by that argument. The Constitution has never been held to grant an entitlement to litigants facing an adverse opponent to have their claim heard in federal court. The Supreme Court repudiated any such notion when it held that district courts have discretion whether to consider actions brought under the Declaratory Judgment Act. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942) ("Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, 28 U.S.C. § 400, it was under no compulsion to exercise that jurisdiction."). Indeed, federal courts have *never* had jurisdiction over all cases involving citizens of different states. Congress has imposed amount-in-controversy requirements since 1789. *See* 28 U.S.C. § 1332 (requiring that amount in controversy exceed $75,000); *Wood v. Stark Tri-County Bldg. Trades Council*, 473 F.2d 272, 273 (6th Cir. 1973) ("The jurisdictional amount requirement has been a part of the federal judicial system since its inception. A $500 minimum amount in controversy in diversity actions was included in the Judiciary Act of 1789."). And although the Constitution extends the judicial power to any dispute that has "any two adverse parties [that] are not co-citizens," *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 531 (1967), Congress has insisted, without Constitutional objection, on "complete diversity between all plaintiffs on one side and all defendants on the other side." *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806); *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 664 (6th Cir. 2004) (citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). There are myriad additional limitations

restricting access to federal court placed on diverse litigants, such as the rule that a controversy may not be removed by a citizen of the state in which the action was originally filed, 28 U.S.C. § 1441(b), and the requirement that a removal notice ordinarily must be filed within thirty days, 28 U.S.C. § 1446(b). There is no constitutional impediment to declining jurisdiction under the Federal Declaratory Judgment Act.

### III.

The Court believes that the *Grand Trunk* factors decidedly favor abstention. Following the direction of *Bituminous Casualty*, *Manley Bennett*, *Grand Trunk*, *Roumph*, and *Flowers*, the Court is constrained to dismiss the present action without prejudice.

Accordingly, it is **ORDERED** that the defendants' motion to dismiss [dkt #4] is **GRANTED**, and the complaint is **DISMISSED without prejudice**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: January 26, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 26, 2009.

s/Felicia M. Moses
FELICIA M. MOSES